IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:07-HC-2070-FL

| | |
|---|---|
| HARRIS EMANUEL FORD, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| MARVIN L. POLK, | ) |
| | ) |
| Respondent. | ) |
| | ) |

This matter came before the court on the motion for summary judgment (DE # 8) pursuant to Federal Rule of Civil Procedure 56 of respondent Marvin L. Polk (hereinafter "respondent"). Also before the court are the motion for relief (DE # 13), which this court will construe as a cross-motion for summary judgment, motion to release documents (DE # 16), and motion to amend/correct (DE # 19), which this court will construe as both a motion to supplement and motion to compel, filed by petitioner Harris Emanuel Ford (hereinafter "petitioner"). These matters are ripe for adjudication. For the following reasons, the court grants respondent's motion for summary judgment, grants petitioner's motion to supplement his petition, and denies petitioner's remaining motions.

STATEMENT OF CASE

On May 7, 2002, petitioner was found guilty following trial by jury of two counts of first-degree sexual offense, first-degree rape, robbery with a dangerous weapon, felony larceny, and first-degree kidnaping. (Resp't's Mem. Ex. 1, pp. 51-70.) Petitioner was sentenced in the Robeson County Superior Court to three hundred eighty-four (384) to four hundred seventy (470) months

imprisonment for each of the two first-degree sexual offense convictions and for the rape conviction. For the kidnaping conviction, petitioner was sentenced to one hundred seventeen (117) to one hundred fifty (150) months, consecutive to the previous sentences. The robbery with a dangerous weapon and felony larceny sentences were consolidated for a term of one hundred thirteen (113) to one hundred forty-five (145) months imprisonment, concurrent with the sentence entered on the kidnaping conviction.[1] (Id.)

Following his convictions, petitioner filed a direct appeal before the North Carolina Court of Appeals, asserting the following: (1) the trial court erred in allowing the short-form indictments for first-degree rape and first-degree sexual offense; (2) the trial court lacked jurisdiction to try and sentence petitioner for first-degree kidnaping because the state proceeded at trial with a superceded indictment; (3) the trial court erred in preventing him from conferring with his attorney during lunch recess; (4) the trial court denied his right to self-representation in violation of his constitutional rights; (5) the trial court erred by continuing petitioner's trial and imposing judgments based on verdicts reached after the session of court was completed; (6) the trial court erred in denying petitioner's motions to dismiss the first-degree kidnaping count for insufficient evidence; (7) the trial court's jury instructions regarding first-degree kidnaping were incorrect; and (8) the trial court erred during the sentencing hearing. State v. Ford, 162 N.C. App. 722, 2004 WL 291976, *2-9 (Feb. 17, 2004) (unpublished).

On February 17, 2004, the Court of Appeals found that there was ambiguity in the jury's verdict sheet because it failed to specify the statutory element upon which the first-degree kidnaping

---

[1] Petitioner's sentences for the sexual offense and rape convictions were aggravated based upon his use of a firearm. (Resp't's Mem. Ex. 1 , pp. 53, 57, and 61.)

2

charge was premised. (Id. at *7-8.) The Court of Appeals instructed the trial court that the appropriate method of re-sentencing petitioner was to arrest judgment on the first-degree kidnaping conviction and to re-sentence him for second-degree kidnaping. (Id. at *8.) The Court of Appeals additionally determined that petitioner's sentences for the sexual offense and rape convictions were impermissibly aggravated based upon petitioner's use of a firearm. (Id. at *8-9.) Accordingly, the Court of Appeals vacated petitioner's sexual offense and rape convictions and remanded for re-sentencing. (Id. at *8-9.) The Court of Appeals affirmed the trial court's determinations on the remaining assignments of error. On November 16, 2004, petitioner was re-sentenced to three consecutive presumptive-range terms of three hundred eighty-four (384) to four hundred seventy (470) months imprisonment for the rape and two sexual offense convictions, a consecutive term of forty-six (46) to sixty-five (65) months imprisonment for the second-degree kidnaping conviction, and one term of one hundred thirteen (113) to one hundred forty-five (145) months imprisonment for the consolidated robbery with a dangerous weapon/larceny conviction, to run concurrent with the sentence imposed for kidnaping. (Resp't's Mem. Ex. 23 pp. 52-61.)

On December 14, 2004, petitioner filed a *pro se* motion for appropriate relief (hereinafter "MAR") in the Robeson County Superior Court, followed by an amendment to his MAR and an affidavit supporting his amended MAR. (Id. Ex. 5.) The Superior Court denied petitioner's MAR on December 17, 2004. (Id. Ex. 6.) On December 23, 2004, petitioner filed a *pro se* writ of supersedeas in the Robeson County Superior Court, requesting that the court stay its order denying his MAR. (Id. Ex. 7.) On January 28, 2005, petitioner filed a *pro se* petition for writ of mandamus in the North Carolina Court of Appeals, requesting that the appellate court direct the Superior Court to issue a ruling on his supersedeas petition. (Id. Ex. 8.) The Court of Appeals denied mandamus

3

relief on February 11, 2005. (Id. Ex. 9.) The Superior Court thereafter denied supersedeas relief. (Id. Ex. 10.)

On December 30, 2004, petitioner filed a *pro se* petition for writ of certiorari with the North Carolina Court of Appeals, requesting permission to file a belated appeal of the North Carolina Court of Appeal's February 17, 2004 order. (Id. Ex. 11.) On January 6, 2005, the Court of Appeals dismissed petitioner's certiorari petition. (Id. Ex. 13.)

On March 29, 2005, petitioner filed a *pro se* petition for writ of certiorari in the North Carolina Supreme Court, which was denied on April 6, 2005. (Id. Exs. 14 and 15.) On May 5, 2005, petitioner filed a *pro se* petition for writ of certiorari in the Robeson County Superior Court, seeking review of that court's denial of his MAR. (Id. Ex. 16.) It does not appear that the Superior Court ruled upon petitioner's May 5, 2005 certiorari petition. On August 11, 2005, petitioner filed a *pro se* petition for writ of certiorari in the Court of Appeals seeking review of the Superior Court's denial of his MAR. (Id. Ex. 17.) The Court of Appeals dismissed petitioner's certiorari petition on September 1, 2005. (Id. Ex. 19.) Then, on September 28, 2005, petitioner filed a *pro se* petition for writ of supersedeas in the North Carolina Supreme Court, requesting a stay of the North Carolina Court of Appeals' order dismissing his certiorari petition. (Id. Ex. 20.) The Supreme Court dismissed petitioner's petition on November 3, 2005. (Id. Ex. 21.)

On August 23, 2005, petitioner's appellate counsel filed a brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), in the North Carolina Court of Appeals. (Id. Ex. 24.) Petitioner's <u>Anders</u> brief sought review of petitioner's November 16, 2004 re-sentencing. (Id.) Petitioner then

4

filed a *pro se* amendment to his Anders brief on September 30, 2005.[2] (Id. Ex. 26.) On March 21, 2006, petitioner's re-sentencing was affirmed. State v. Ford, 176 N.C. App. 768, 2006 WL 695762 (March 21, 2006) (unpublished). Petitioner thereafter filed a *pro se* petition for discretionary review in the North Carolina Supreme Court, which was dismissed on May 4, 2006. (Id. Exs. 28 and 29.) On February 23, 2007, petitioner filed a *pro se* petition for writ of habeas corpus in the North Carolina Supreme Court, which was denied on February 27, 2007. (Id. Exs. 30 and 31.)

On April 11, 2007, petitioner filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this court. In his petition, petitioner alleged the following: (1) his right to self-representation was violated; (2) his Sixth Amendment right under the United States Constitution to confront witnesses was violated; and (3) he received ineffective assistance of trial and appellate counsel. Petitioner also alleged that his conviction was obtained through insufficient evidence because DNA evidence was concealed from him at trial.

On May 29, 2007, respondent filed a motion for summary judgment arguing that petitioner's claims are without merit. Petitioner responded to respondent's motion on June 18, 2007. Petitioner then filed a motion to release documents, a second response to respondent's motion for summary judgment, a motion to amend/correct, and an affidavit.

## STATEMENT OF THE FACTS

The facts as stated by the North Carolina Court of Appeals are summarized as follows:

Prior to 27 August 2001, defendant and Lora Ann Bridges (the "victim") lived together for approximately three months; however, defendant had recently left the

---

[2] Petitioner attached a cover letter to this filing stating that he previously filed a *pro se* document entitled "Defendant's Arguments." (Id. Ex. 26.) This document was received by the North Carolina Attorney General's office on August 31, 2005. (Id. Ex. 32.) However, it does not appear that the North Carolina Court of Appeals received the filing. (Id. Ex. 22.)

victim's residence to spend more time with Lakesa Wiggins ("Wiggins"), defendant's baby's mother.

On 27 August 2001 around 12:30 a.m., defendant was dropped off by a man at the victim's house. When the victim responded to defendant's requests for money by explaining that she did not have any, defendant retrieved a roll of duct tape and carried it to the back of the victim's home. Defendant summoned the victim to the bedroom, where she found him standing with a knife and demanding that she get down on her knees. Defendant then used duct tape to tape the victim's mouth and to bind her hands behind her back. Defendant picked up the victim, took her out to her car, and forced her into the trunk of her car.

Defendant started driving, but, due to fumes emanating from a gas can in the trunk and a fear of small spaces, the victim experienced difficulty breathing and began kicking the trunk with her feet and making other noises. Defendant stopped the car, removed the victim's restraints, and allowed the victim to sit in the passenger seat of her car, threatening to kill her if she attempted anything. Defendant proceeded to Lumberton where, after he re-iterated his warning to the victim not to try anything, he left her locked in the car without keys. Defendant spoke to two girls and arranged the sale of the victim's air conditioning unit, which he had previously removed from her home after he had forced her into the trunk of her car.

Defendant and the victim then returned to the victim's house, where defendant followed the victim with the knife to her bedroom and forced her to engage in sexual intercourse and perform sexual acts on him, causing the victim to vomit. Thereafter, defendant stated he could kill the victim and "nobody would ever know because nobody knows I'm here." Defendant choked the victim until she lost consciousness. When she woke up, defendant insulted the victim and again choked her into unconsciousness. The victim did not regain consciousness until the next day.

When the victim woke the following day, defendant was slapping her, insulting her, and again demanding money. The victim gave him three dollars. Because that was not enough, defendant took her television and put it in the car. Defendant then took the victim to Lumberton and arranged for the sale of the victim's television.

In Lumberton, the victim began experiencing scleral hemorrhaging, a symptom consistent with her testimony concerning the strangulations inflicted the previous night during the time the victim was with defendant, and the victim began "crying blood." She "begged" defendant to take her to the hospital but defendant refused and continued to drive different places to get more money from other people. After the victim tried to flee from the car, defendant forced her to drive to a trailer park in Fayetteville, where he left her. The victim drove herself to Cape Fear Valley Hospital where she received medical treatment. The treating nurse testified the

6

victim presented with symptoms consistent with strangulation, including hemorrhaged blood vessels in the eyes, a hoarse and raspy voice, and a swollen tongue bleeding around the edges.

Defendant testified on his own behalf and stated that the victim had become angry, threatening, and abusive after drinking and smoking crack cocaine. Defendant further testified the victim initiated a physical altercation and threatened him with a knife. Nonetheless, defendant remained at the victim's house because he had no means of transportation. Defendant testified the victim later calmed down and offered to pawn the television in order to give him money if he would get a job and repay her. Defendant explained the victim's injuries resulted from their physical altercation and a later altercation between the victim and Wiggins.

Ford, 162 N.C. App. at *1-2.

## DISCUSSION

I.    Motion to Release Documents

Petitioner filed a motion to release documents, requesting that the court compel Central Prison to release documents belonging to petitioner. Petitioner states that Central Prison confiscated certain documents that are necessary to support his claim so that he may respond to respondent's motion for summary judgment. Petitioner, however, has not stated what documents are being withheld, nor has he stated how the documents are necessary to support his claim. Furthermore, it is not clear whether the documents in question are still being withheld, as petitioner has filed several detailed responses to respondent's motion for summary judgment. Based upon the foregoing, petitioner's motion to release documents is DENIED.

II.   Motion to Amend/Correct

In his motion to amend/correct, petitioner requests permission to supplement his petition. For good cause shown, petitioner's motion to supplement his petition is GRANTED.

7

Petitioner's motion to amend/correct also requests this court to compel respondent to respond to his discovery requests. A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course. Bracy v. Gramley, 520 U.S. 899, 904 (1997). Rule 6(a) of the Rules Governing § 2254 cases states "[a] judge may, for good cause, authorize a party to conduct discovery." Additionally, pursuant to Rule 6(b), a "[a] party requesting discovery must provide reasons for the request." Petitioner has not provided sufficient reasons to establish good cause to invoke the process of discovery. Therefore, petitioner's motion for discovery is DENIED.

III. Motion for Summary Judgment

    A    Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

The standard of review for habeas petitions brought by state inmates, where the claims have been adjudicated on the merits in the state court, is set forth in 28 U.S.C. § 2254(d). That statute states that habeas relief cannot be granted in cases where a state court considered a claim on its

8

merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or the state court decision was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1) and (2). A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state court decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal principle from [the Supreme] Court's cases but unreasonably applies it to the facts of the state prisoner's case." Id. at 407. A state court decision also may apply Supreme Court law unreasonably if it extends existing Supreme Court precedent to a new context where it does not apply, or unreasonably refuses to extend existing precedent to a new context where it should apply. Id. The applicable statute

> does not require that a state court cite to federal law in order for a federal court to determine whether the state court's decision is an objectively reasonable one, nor does it require a federal habeas court to offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings.

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000), cert. denied, 534 U.S. 830 (2001). Moreover, a determination of a factual issue made by a state court is presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

9

B.    Analysis

1.    Self Representation

In his first claim, petitioner alleges that his rights pursuant to the Sixth Amendment of the United States Constitution were violated because the trial court refused his request to represent himself at trial. The Court of Appeals adjudicated this claim and denied it as without merit.[3]

A criminal defendant has the right pursuant to the Sixth Amendment of the United States Constitution to the assistance of counsel for his defense, but also the right to represent himself. Faretta v. California, 422 U.S. 806, 818 (1975). The defendant who seeks to invoke his right to represent himself, thereby waiving counsel, must do so "clearly and unequivocally." Fields v. Murray, 49 F.3d 1024, 1029 (4th Cir. 1995) (citations omitted). This is because, in doing so, the defendant must waive the constitutional right to counsel. Id. at 1028. The requirement of a clear and unequivocal demand for self-representation enables the reviewing court to navigate between the competing interests of the right to counsel and the right to self-representation. Id. Once the defendant has made a clear and unequivocal request, the trial court must determine whether he waives his right to counsel "knowingly and intelligently." Faretta, 422 U.S. at 835.

The North Carolina Court of Appeals, on direct appeal, held that petitioner did not make a clear and unequivocal request to represent himself. Ford, 162 N.C. App. at *5. The Court of Appeals reasoned that the totality of the conversations between petitioner and the judge at trial, including petitioner's statement that he "d[id] not want to dismiss [his] counsel," established that

---

[3] Respondent contends that this issue is procedurally barred. Although questions of procedural bar are usually addressed first, the court finds it is in the interest of judicial economy to exercise its discretion and proceed directly to the merits of petitioner's claim. See Lambrix v. Singletary, 520 U.S. 518, 525 (1997) (finding that a court may bypass procedural bar analysis and address claim on merits if it is "easily resolvable against the habeas petitioner").

petitioner did not assert a desire to represent himself. Id. This finding is one of fact, entitled to a presumption of correctness. Fields, 49 F.3d at 1032 (stating that question of whether a defendant invoked right to self-representation is one of fact entitled to the presumption of correctness). Petitioner has the burden to rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The record establishes that petitioner cannot rebut this presumption because his assertions at trial, at most, constitute an ambiguous request to represent himself.

Even if petitioner's request could be considered an unequivocal demand for self-representation, it would have been within the trial court judge's discretion to deny such a request because petitioner did not raise the issue at the appropriate time. A request for self-representation must be granted "before 'meaningful' trial proceedings have begun." United States v. Green, 50 F.3d 8, 1995 WL 120684, *2 (4th Cir. Mar. 22, 1995) (unpublished) (citing United States v. Lawrence, 605 F.2d 1321, 1325 (4th Cir. 1979)); United States v. Dailey, 2007 WL 2005163, 240 Fed. Appx. 577, 579 (4th Cir. July 10, 2007) (unpublished) (upholding denial of request to proceed *pro se* after the jury was chosen). In this case, petitioner did not raise the issue of proceeding *pro se* until after meaningful trial proceedings had begun. Specifically, the State had presented its case in chief. Hence, petitioner has not demonstrated that the Court of Appeal's denial of this claim constituted an unreasonable determination of the facts or a decision contrary to, or involving an unreasonable application of Supreme Court precedent. Thus, petitioner's first claim is without merit.

2. Insufficient Evidence

In his second claim, petitioner contends that there was insufficient evidence to support his conviction. Respondent contends that this claim is procedurally defaulted. Under the doctrine of procedural default, a federal court is precluded from reviewing the merits of any claim that was

11

found to be procedurally barred by the state court on adequate and independent state grounds. Coleman v. Thompson, 501 U.S. 722, 731-32 (1991). However, procedurally defaulted claims can be reviewed by a federal habeas court if the petitioner demonstrates cause and prejudice, or that the failure to consider the claim will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750.

Petitioner did not raise this claim on direct appeal, but did raise it in his MAR and his petition for writ of certiorari. The MAR court held that this claim was procedurally barred pursuant to N.C. Gen. Stat. § 15A-1419(a)(1).[4] The procedural bar rule of N.C. Gen. Stat. § 15A-1419(a) is an independent and adequate state ground precluding federal habeas review. See Williams v. French, 146 F.3d 203, 209 (4th Cir. 1998), cert. denied, 525 U.S. 1155 (1999); Boyd v. French, 147 F.3d 319, 332 (4th Cir. 1998), cert. denied, 525 U.S. 1150 (1999). Therefore, petitioner's claim based upon insufficient evidence is procedurally defaulted, and the court is precluded from reviewing this claim.

Petitioner contends that he is able to overcome the procedural default because he is able to establish cause and prejudice. As grounds for cause, petitioner alleges that he received ineffective assistance of appellate counsel because his counsel did not raise his insufficient evidence claim on direct appeal. The Sixth Amendment right to counsel includes the right to the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that counsel's representation was

---

[4] N.C. Gen. Stat. § 15A-1419(a)(1) reads in pertinent part: "the following . . .[is a] ground[] for the denial of a motion for appropriate relief, including motions filed in capital cases:(1) Upon a previous motion made pursuant to this Article, the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so."

12

objectively unreasonable and that a reasonable probability exists that, but for the attorney's error, he would have prevailed on his appeal. Smith v. Robbins, 528 U.S. 259, 285 (2000) (citing Strickland, 466 U.S. at 687-88). Appellate counsel is not required to assert all non-frivolous issues on appeal, "but rather may select from among them in order to maximize the likelihood of success on appeal." Smith, 528 U.S. at 288. Reviewing courts must presume that in determining which issues to appeal, appellate counsel selected those issues most likely to afford relief. Pruett v. Thompson, 996 F. 2d 1560, 2568 (4th Cir. 1993).

Petitioner contends that his appellate counsel should have argued on appeal that the trial court erroneously admitted hair-sample DNA evidence that was not linked to him.[5] Petitioner contends that the error relating to the admission of the DNA evidence was so prejudicial that it violated his rights under the Due Process Clause of the Fourteenth Amendment of the United States Constitution. In particular, petitioner objects to the admission of expert testimony of North Carolina State Bureau of Investigations Special Agent Lucy Milks (hereinafter "Agent Milks"), who testified regarding hairs she obtained from a towel in the victim's bathroom, a rectal swab of the victim, and pubic combings of the victim.[6] Agent Milks testified that she found two head hairs on the towel in the victim's bathroom, which matched head hairs from petitioner. (Tr. vol. II at p. 233.) Agent Milks

---

[5] With this claim, petitioner is essentially challenging the state court's decision to admit hair-sample DNA testimony. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting federal habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treatise of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). It is only in circumstances impugning fundamental fairness or infringing specified constitutional protections that a federal question is presented. Grundler v. State of North Carolina, 283 F.2d 798, 802 (4th Cir. 1960).

[6] Agent Milks was received by the trial court as an expert in hair analysis and forensic science. (Tr. vol. II p. 228.)

13

further testified that the head hairs found on the towel were the only hairs that matched petitioner. (See id. at 232-33.)

Petitioner argues that he was unduly prejudiced by Agent Milks testimony because Agent Milks could not tie the hairs obtained from the victim's rectal swab and pubic combings to petitioner. The court finds that petitioner was not prejudiced by the admission of this evidence. Instead, the court finds that the State's failure to connect the hair-sample evidence to petitioner was detrimental to the State's (and not petitioner's) case. Because petitioner did not provide evidence to establish that the trial court's admission of the DNA evidence was so egregious as to render the entire trial fundamentally unfair, the court finds petitioner's due process claim is without merit.

Petitioner also contends that his appellate counsel should have argued on appeal that his conviction was based upon insufficient evidence. The standard of review for a claim of insufficient evidence on habeas corpus review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Wright v. West, 505 U.S. 277, 284 (1992); Jackson v. Virginia, 443 U.S. 307, 319 (1979).

In support of his claim that a rational trier of fact could not find the essential elements of the crime beyond a reasonable doubt, petitioner asserts that the victim's testimony was not reliable because it was inconsistent. The jury, however, deemed the victim's testimony at trial credible and reliable. This court must defer to the jury's assignment of credibility to witnesses at trial. See Wensell v. McBride, No. 3:06-CV-4, 2007 WL 2220603, * 10, n. 9 (N.D.W. Va. July 27, 2007) (citing Johnson v. Alabama, 256 F.3d 1156, 1172 (11th Cir. 2001) (unpublished)); appeal dismissed, 2008 WL 539897 (2008). Accordingly, the court will not question the credibility of the victim as

14

a witness. Additionally, the court notes that the victim's testimony was corroborated by medical evidence presented at trial indicating that the victim was strangled. (Tr. vol I, pp. 117-118.) Robeson County Sheriff Deputy Randy McGirt further corroborated the victim's testimony when he stated that he visited the victim's residence shortly after the incident and recovered her torn undergarments, observed the spot where the victim's television has been sitting, noticed blood stains on the victim's bed, obtained duct tape from the victim's dresser, and found a knife in the victim's car. (Id. pp. 146-147.)

Petitioner has not presented any evidence to meet his burden to show that no rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Therefore, petitioner is unable to establish that the adjudication by the Court of Appeals was contrary to, or involved an unreasonable application of, clearly established federal law. Accordingly, petitioner's second claim is without merit.

3. Out of Court Statement by an Unknown Declarant

In his third claim, petitioner argues that the trial court violated his rights under the Confrontation Clause of the Sixth Amendment of the United States Constitution and the United States Supreme Court's ruling in Crawford v. Washington, 541 U.S. 36 (2004), when it admitted an out of court statement by an unknown declarant. Petitioner's specific challenge is to Deputy Campbell's testimony regarding a conversation he had with an unknown young woman who was at the residence where the victim and Deputy Campbell recovered the victim's stolen television. Petitioner raised this claim on direct appeal of his re-sentencing. The Court of Appeals adjudicated this issue and found it to be without merit.

15

The Court of Appeals, following petitioner's re-sentencing, imposed a procedural bar to petitioner's constitutional challenge to Deputy Campbell's testimony based on North Carolina Rule of Appellate Procedure 10(b)(2)'s contemporaneous objection rule because petitioner failed to raise his constitutional claim in the trial court. Ford, 176 N.C. App. at *2. A state's contemporaneous objection rule is an independent and adequate state procedural bar. See Wainwright v. Sykes, 433 U.S. 72, 89-90 (1977). Accordingly, petitioner's claim is procedurally defaulted. Petitioner contends that he is able to overcome the procedural default because he is able to establish cause and prejudice. To show cause, a petitioner must show something external prevented him from complying with the state procedural rule. Coleman, 501 U.S. at 753. To show prejudice, a petitioner must show he was actually prejudiced as a result of the alleged violation of federal law. See United States v. Frady, 456 U.S. 152, 168 (1982).

As grounds for cause, petitioner alleges that his trial counsel rendered ineffective assistance. To establish ineffective assistance of trial counsel, a petitioner must show that his counsel acted unreasonably and that, but for counsel's unreasonable performance, there is a reasonable probability that the outcome at trial would have been different. Strickland, 466 U.S. at 687. Where a petitioner fails to make a showing that counsel performed unreasonably, the court need not address whether counsel's performance prejudiced the defense. Id.

Petitioner asserts that his trial counsel was ineffective for failing to object to Deputy Campbell's testimony regarding an out-of-court declarant because such testimony violated the Confrontation Clause as explained in the United States Supreme Court's ruling in Crawford. The United States Supreme Court in Crawford held that the Confrontation Clause allows "testimonial" statements made by a witness not present to testify to be admitted against a defendant only where

16

the declarant is unavailable and the testimonial evidence was previously subject to cross examination by the defendant.[7] Crawford, 541 U.S. at 68.

The Fourth Circuit Court of Appeals addressed a situation similar to the one presented in the instant case in Call v. Branker, No. 06-27, 2007 WL 4115934 (4th Cir. Nov. 20, 2007) (unpublished). In Call, the Fourth Circuit held that the trial counsel's failure to raise the Crawford issue at trial during a re-sentencing hearing was not constitutionally deficient because the introduction of the challenged testimony through "a dry second hand account" by the testifying officer benefitted the defendant by minimizing the retelling of the acts establishing the defendant's guilt. Call, 2007 WL 4115934 at * 7-10.[8] In this case, Deputy Campbell testified regarding his conversations with the unidentified woman in a limited fashion. For instance, the prosecutor repeatedly cautioned Deputy Campbell not to repeat the out of court declarant's words verbatim. (TR. vol. 2, pp. 199-200.) Additionally, Deputy Campbell's testimony concerning the out-of-court declarant did not re-tell the acts establishing guilt. Instead, the testimony appears to have been used to establish the manner in which the victim's television was recovered. Accordingly, petitioner's due process rights were not violated. Because there was no constitutional violation, petitioner's trial counsel did not act unreasonably by failing to object to this issue at trial.

---

[7] Petitioner's trial and original direct appeal pre-date the Court's ruling in Crawford. The law at the time of petitioner's trial and original direct appeal provided that an unavailable witness's statement could be introduced if the statement bore "adequate indicia of reliability." Ohio v. Roberts, 448 U.S.56, 66 (1980) (overruled). Petitioner has not stated the grounds upon which his counsel should have objected to the testimony at trial.

[8] The Fourth Circuit in Call also based its finding that the out of court declarant's testimony did not violate the confrontation clause on the fact that he had testified during the guilt phase of the trial, and was subject to cross-examination. Call, 2007 WL 4115934, *9.

17

In light of the substantial evidence indicating petitioner's guilt, he is not able to establish that his trial counsel's failure to object to this testimony had a substantial and injurious effect or influence in determining the jury's verdict. Accordingly, he is not able to establish the prejudice prong of the Strickland test. Without a showing of cause or prejudice, petitioner is unable to overcome the procedural default. Therefore, petitioner's third claim is without merit.

4.      Ineffective Assistance of Counsel

In his fourth claim, petitioner alleges that he received ineffective assistance of trial and appellate counsel. Petitioner raised these claims in his MAR. The MAR court adjudicated the claims and found them to be without merit.

### 1. Ineffective Assistance of Trial Counsel

Petitioner alleges that his trial counsel was ineffective because he coerced his testimony at trial. Petitioner also contends that his trial counsel failed to properly investigate the offenses for which petitioner was charged and failed to subpoena the witnesses who would have corroborated his testimony at trial. As stated, to establish ineffective assistance of trial counsel a petitioner must show that his counsel acted unreasonably and that, but for counsel's unreasonable performance, there is a reasonable probability that the outcome at trial would have been different. Strickland, 466 U.S. at 687. Where a petitioner fails to make a showing that counsel performed unreasonably, the court need not address whether counsel's performance prejudiced the defense. Id.

In support of petitioner's claim that his counsel coerced his testimony, petitioner asserts that his counsel encouraged him in several out-of-court discussions to testify untruthfully. Petitioner also alleges that his counsel asked leading questions during petitioner's direct testimony. Petitioner,

18

however, does not state that he followed his counsel's alleged advice by testifying untruthfully. Nor does petitioner claim that he actually did testify untruthfully at trial.

As for petitioner's allegations that his counsel asked leading questions, it appears from the trial transcript that petitioner's trial counsel's pattern of questioning on direct was used to facilitate, rather than hinder, petitioner's hurried and erratic testimony at trial. This is evidenced by the fact that the trial court judge dismissed the jury at one point and admonished petitioner to slow down and answer his counsel's questions. (TR. vol. II, pp. 298-99.) This conversation between the trial court judge and petitioner also serves as evidence that petitioner's testimony was not coerced, in that petitioner responded to the judge's request that he slow down by stating that he had "been waiting for seven months to come and let this all be known." (Id. p. 298.) Based upon the forgoing, it appears that trial counsel's questioning during his direct examination of petitioner was part of a tactical decision to present petitioner's testimony in a concise and coherent manner. "An attorney's tactical decisions are entitled to deference and should not be second guessed." United States v. Sadegh, 106 F.3d 394, 1997 WL 20391, *1 (4th Cir. Jan. 21, 1997) (citing Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977)).

Petitioner fails to show that trial counsel's questioning during petitioner's direct examination was anything other than tactical decision making, which does not support a finding of ineffectiveness. Therefore, petitioner has not demonstrated that his trial counsel acted unreasonably.

Even if petitioner was able to establish the objective prong of the Strickland test, his claim still must fail because he is unable to show prejudice. Petitioner has not presented any evidence to demonstrate that he was prejudiced by his alleged coerced testimony. Because petitioner has not established cause or prejudice, he is unable to overcome the procedural default of this claim.

19

The court will now address petitioner's remaining ineffective assistance of trial counsel claim. Petitioner is unable to establish that his counsel was ineffective for failing to properly investigate the charged offenses or to subpoena witnesses who would have offered favorable testimony. Rather, he merely presents unsupported conclusory allegations, in that he does not state any evidence or testimony that further investigation would have uncovered. Nor does petitioner identify any witnesses which would have offered favorable testimony. Petitioner's unsupported allegations do not warrant relief. Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), abrogated on other grounds by Trest v. Cain, 522 U.S. 87 (1997) ("In order to obtain an evidentiary hearing on an ineffective assistance claim--or for that matter on any claim--a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing.") Accordingly, the MAR court's adjudication of petitioner's ineffective assistance of trial counsel claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Therefore, petitioner's ineffective assistance of trial counsel claims are without merit.

## 2. Ineffective Assistance of Appellate Counsel

In addition to his ineffective assistance of trial counsel claims, petitioner also alleges that his appellate counsel was ineffective. In his first ineffective assistance of appellate counsel claim, petitioner contends that his appellate counsel failed to raise petitioner's ineffective assistance of trial counsel claims on direct appeal. For the above-stated reasons, the court has found that petitioner's ineffective assistance claim against his trial counsel is without merit. Failure to raise a meritless claim does not fall below "an objective standard of reasonableness." See Lockhart v. Fretwell, 506

20

U.S. 364, 382 (1993) (counsel cannot be deemed ineffective for failing to raise a meritless claim); Strickland, 466 U.S. at 687-91. Thus, this ineffective assistance of appellate counsel claims is without merit.

In his second ineffective assistance of appellate counsel claim, petitioner claims that his appellate counsel cited inapplicable case law and a repealed statute in petitioner's original appellate brief. Petitioner again has provided no factual support for this claim.[9] Nor has petitioner stated how the alleged citation of the inapplicable case law prejudiced his case. Accordingly, these unsupported allegations do not warrant relief. Nickerson, 971 F.2d at 1136.

Regarding petitioner's contention that his appellate counsel relied upon a repealed statute, it does appear that petitioner's appellate counsel cited a repealed statute--namely N.C. Gen Stat. § 15A-1340.4(a)(1)(F) (repealed 1993)--in petitioner's appellate brief. This statute, however, was replaced by a nearly identical statute--N.C. Gen. Stat. § 15A-1340.16(d). State v. Talley, No. COA07-89, 2007 WL 4105724, *2 (N.C. App. Nov. 20, 2007) (unpublished). Although petitioner's appellate counsel technically erred, petitioner has not demonstrated how he was prejudiced by this error. In fact, petitioner was successful on his direct appeal because his case was remanded for re-sentencing. Because petitioner has not established prejudice, this ineffective assistance of counsel claim is without merit.

In his third ineffective assistance of appellate counsel claim, petitioner claims that his appellate counsel failed to notify petitioner of his right to file a discretionary appeal to the United

---

[9] The only support petitioner provides for this claim is an attached excerpt of his appellate brief on which he has underlined a couple of lines. The court is unable to determine how the underlined portion of his appellate brief supports his ineffective assistance of counsel claim.

21

States Supreme Court.[10] A petitioner in state custody seeking federal habeas relief must exhaust all remedies available in state courts. 28 U.S.C. § 2254(b)(1)(A). "[T]he exhaustion requirement is satisfied so long as a claim has been 'fairly presented' to the state courts." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). A claim is "fairly presented" if the petitioner presents to the state court the "substance of his federal habeas corpus claim," including "both the operative facts and the controlling legal principles." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997) (internal quotations omitted).

In this case, petitioner did not raise the instant ineffective assistance of appellate counsel claim in his MAR. The first time that petitioner raised his current claim was in his petition for discretionary review that he filed in the North Carolina Court of Appeals. When a claim is first raised in a request for discretionary review, a petitioner cannot be said to have fairly presented his claim to the state courts. See Castille v. Peoples, 489 U.S. 346, 351 (1989); see also Felton v. Barnett, 912 F.2d. 92, 94-95 (4th Cir. 1990) (noting that certiorari is a form of discretionary review and the denial of certiorari often has nothing to do with the merits). Accordingly, petitioner has not exhausted his state remedies for this claim, and the claim is DISMISSED without prejudice to allow petitioner to exhaust his state remedies.

In his final ineffective assistance of appellate counsel claim, petitioner claims that his appellate counsel failed to communicate with him and omitted necessary facts from his appeal. Petitioner does not provide any factual support for these conclusory allegations. As stated,

---

[10] Petitioner presented an affidavit on December 31, 2007, stating that a disciplinary complaint had been filed against Petitioner's appellate counsel, Paul C. Pooley, regarding this issue. It does not appear that the disciplinary proceeding has concluded.

petitioner's unsupported allegations do not warrant relief. Nickerson, 971 F.2d at 1136. Therefore, these ineffective assistance of appellate counsel claims are without merit.

In summary, petitioner has not demonstrated that the MAR court's denial of the ineffective assistance of trial and appellate counsel claims petitioner presented constituted an unreasonable determination of the facts or a decision contrary to, or involving an unreasonable application of, Supreme Court precedent. Therefore, petitioner's fourth claim is without merit.

## CONCLUSION

For the foregoing reasons, petitioner's motion to supplement his petition (DE # 19) and respondents' motion for summary judgment (DE # 8) are GRANTED. All of petitioner's claims are DISMISSED with prejudice, except for petitioner's ineffective assistance of counsel claim arising out of his allegation that his counsel failed to notify him regarding his right to file a discretionary appeal to the United States Supreme Court. The aforementioned ineffective assistance of counsel claim is DISMISSED without prejudice to allow petitioner the opportunity to exhaust his state court remedies. Petitioner's cross-motion for summary judgment (DE # 13), motion to release documents (DE # 16), and motion to compel (DE # 19) are DENIED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 13th day of March, 2008.

LOUISE W. FLANAGAN
Chief United States District Judge

23